UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS K. SMITH

    Plaintiff,

                              Case No.:  12 Civ 4374 (ALC) (GWG)

v.

BARNESANDNOBLE.COM LLC

    Defendant,

## AMENDED COMPLAINT FOR DAMAGES

Comes now the Plaintiff Louis K. Smith ("Smith") and amends and restates his Complaint against Barnesandnoble.com LLC ("BN.com" or "Defendant") and states as follows:

### INTRODUCTION

1.    This is an action for Copyright Infringement and Contributory Copyright Infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C §§ 101 et seq. (the "Copyright Act") and for Unfair Competition under the Lanham Act 15 U.S.C. § 1125 ("Lanham Act").

### PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff Smith is a resident of the State of Arizona having his principal place of residence in Cochise County, 831 Palo Verde Drive, Sierra Vista, AZ 85635.

3. Plaintiff Smith adds Plaintiff Enrico Festa ("Festa") to his amended complaint ("Complaint"). Plaintiff Festa is a resident of the State of California having his principal place of residence in Los Angeles County, 4101 Arch Dr. #123, Studio City, CA 91604.

4. Upon information and belief Defendant is a New York Limited Liability Company duly organized and existing under laws of the State of New York, with its principal place of business in New York County, 76 9th Ave #9, New York, NY 10011, doing business within this judicial district, and globally, as BN.com, via its Internet website ("Website"), located at www.barnesandnoble.com.

5. This court has jurisdiction over the subject matter of the Complaint for the Copyright Counts pursuant to 28 U.S.C. 1331 (federal question) and pursuant to the Copyright Act under 28 U.S.C. 1338(a) (copyrights) and over the Unfair Competition Count under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

6. Defendant is subject to personal jurisdiction in New York because Defendant's acts of Copyright Infringement, Contributory Copyright Infringement, and Unfair Competition occurred either directly, or indirectly, within this judicial district (and elsewhere in the State of New York and the United States), and Defendant has transacted business within this judicial district.

7. Venue is proper in this judicial district pursuant to 28 U.S.C 1391( b) and (c) because Defendant is subject to personal jurisdiction in this judicial district, has conducted business in this judicial district, certain parts of the infringing acts, as alleged below, occurred in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**SMITH'S FACTUAL ALLEGATIONS COMMOM TO ALL COUNTS**

8.  Smith completed the writing of his book, "The Hardscrabble Zone" (ISBN-13: 978-1589093355) (hereafter "HSZ") in the summer of 2006. *See* <u>Exhibit A</u>, Copyright Registration Certificate issued by the U.S. Copyright Office, attached hereto and incorporated herein by reference.

9.  Smith authored the first edition of the HSZ, and all subsequent editions, under his pen name "Jeremy Reading." *See* <u>Exhibit B</u>, back and front cover pages of the HSZ, attached hereto and incorporated herein by reference.

10. On or about September 2009, Smith uploaded the HSZ to Smashwords, an online eBook distributor owned and operated by Smashwords, Inc. ("Smashwords"), located on the Internet at www.smashwords.com.

11. On or about October 26-27, 2011, Smith terminated his relationship with Smashwords. *See* <u>Exhibit C</u>, email termination correspondence between Smith and Smashwords, attached hereto and incorporated herein by reference.[1]

12. BN.com is a Smashwords' retailer.

13. On April 3, 2012 Smith was notified by Amazon.com ("Amazon") that the HSZ would be removed from Amazon's KDP Select program because the latter required exclusivity and Amazon had found the HSZ available for sale on BN.com. *See* <u>Exhibit D</u>, Amazon's notification to Smith, attached hereto and incorporated herein by reference.[2]

14. Upon receipt of the April 3, 2012 letter from Amazon, over five months after Smith terminated his relationship with Smashwords, Smith became aware that the HSZ was

---

[1] *See generally* Exhibit C arrow in left margin.
[2] *See generally* Exhibit D arrow in left margin.

still on sale at one of Smashwords' retailers (i.e. BN.com). *See Id.*

15. Smith did not have a contractual relationship with BN.com, and any relationship that existed between the parties was due solely to Smith's relationship with Smashwords, which terminated on or about October 26-27, 2011. *See* <u>Exhibit C</u>.

16. On April 20, 2012 Smith's counsel provided notification of copyright infringement to BN.com via correspondence with BN.com's legal affairs manager, Ms. Barona. *See* <u>Exhibit E</u>, first notification of copyright infringement to BN.com, attached hereto and incorporated herein by reference.

17. On April 20, 2012, Mr. Friedman, a Compliance Manager for BN.com, responded to Smith's notification correspondence indicating (paraphrasing) "that BN.com had no liability as a retailer because of its relationship with Smashwords" but nonetheless agreed to remove the HSZ listing from BN.com's website. *See* <u>Exhibit F</u>, response by Mr. Friedman, attached hereto and incorporated herein by reference.

18. On April 20, 2012 Smith's counsel asked Mr. Friedman to clarify BN.com's position with respect to resolving the dispute between the parties. *See* <u>Exhibit G</u>, request for clarification, attached hereto and incorporated herein by reference.

19. On April 23, 2012 Ms. Barona responded to Smith's counsel's request for clarification, essentially denying liability by requesting that all further correspondence regarding this matter be directed to Smashwords. *See* <u>Exhibit H</u>, BN.com's response to Smith's counsel request for clarification, attached hereto and incorporated herein by reference.

20. On April 23, 2012, Smith's counsel received correspondence from the CEO of

5

Smashwords, Mr. Mark Coker ("Coker"). In this correspondence, Coker confirmed that the contractual relationship between Smith and Smashwords ended on or about October 26 or 27, 2011, and that it was Smashwords' responsibility to notify its retailers that said retailers no longer had any rights to distribute the HSZ, quoting from Smashwords terms of service ("TOS") "[w]hen an author or publisher unpublishes (sic) a book at Smashwords, this causes *automated systems at Smashwords to transmit takedown notices to Smashwords retailers*, which usually go out once per week. It typically takes anywhere from two days to two weeks for Smashwords retail partners to remove listings once we notify them." [emphasis added]. *See* Exhibit I, initial correspondence from Smashwords' CEO, attached hereto and incorporated herein by reference.[3]

21. On April 24, 2012, Smith's counsel responded to Coker stating in part, the following (paraphrasing): a) if Smashwords desired to stand in BN.com's shoes and settle the dispute with Smith, then Smith would release BN.com from all liability; b) BN.com continued to distribute the HSZ over five months after the Smith's relationship with Smashwords' ended; c) Smith could avail himself of statutory damages; and d) Smith's counsel requested a business record confirmation that Smith clicked "I Agree" to an online TOS and the version of the TOS that existed at the time. *See* Exhibit J, Smith's counsel's response to correspondence from Smashwords' CEO, attached hereto and incorporated herein by reference.[4]

22. On April 27, 2012, Coker responded with a vitriolic attack on Smith's Counsel and failed entirely to answer any of the substantive arguments that Smith's counsel

---

[3] *See generally* Exhibit I arrow in left margin.
[4] *See* Smith's counsel comments delineated in brackets [ ].

set forth as to why BN.com had infringed on Smith's copyright of the HSZ, including Smith's counsel's request that Coker produce a signed electronic contract indicating when Smith clicked "I Agree" to Smashwords' TOS and the date on which said contract was accepted. *See* Exhibit K, Coker response on 4-27-2012, attached hereto and included herein by reference.[5]

23. Smashwords and BN.com have repeatedly failed to address the issue of the illusory contract that Smashwords entered into with Smith, which, even if valid[6] was effectively terminated by Smith five months prior to a determination that BN.com was still distributing the HSZ in violation of federal copyright law, and which left Smith with a significant unknown electronic mess to cleanup on the Internet, one that Smashwords admits was its duty to perform. *See* paragraph 20 above.

24. Smashwords and BN.com have repeatedly (i.e. after express notification by Smith's counsel), and conveniently, ignored the fact that statutory damages are available to Smith because the infringement occurred after the HSZ's registration with the U.S. Copyright Office. *See* 17 U.S.C. § 504(c); *see also* Exhibit J, attached hereto and incorporated herein by reference.[7]

25. Despite Smashwords' self serving claims as to the benefit that Smashwords and its retailers provides its authors, it creates agreements with ***reckless indifference*** as to the contractual and intellectual property rights of its authors and then essentially attacks them as "worthless" when they have the temerity to stand up for their rights. *See generally* Exhibit

---

[5] *See* section in Exhibit K arrow in left margin.
[6] Smashwords has failed entirely to produce any credible evidence of contract acceptance either as to the terms that were accepted by Smith or the date that acceptance took place.
[7] *See* sections in Exhibit J and Exhibit K arrows in left margin.

K.

26.     Despite Smith's repeated reasonable attempts to settle this matter without the need for litigation, and despite the fact that BN.com has produced no credible evidence that it had the right to distribute the HSZ five months after Smith's relationship with Smashwords terminated, it has refused to negotiate in good faith regarding this matter. Therefore, BN.com leaves Smith no alternative other than to bring this action.

27.     Defendant created and displayed a listing of the HSZ in Nook format, with Defendant's "preview" feature enabled. *See* Exhibit L; *see also* Exhibit M with "red arrow" highlighting "Get Free Sample" feature; Exhibit O, Martin Gwynn Affidavit ("Getting a Free Sample"), attached hereto and incorporated herein by reference.

28.     Defendant's listing of the HSZ was unauthorized because Smith's contract with Smashwords was illusory. Alternatively, to the degree that Smith is found to have had an enforceable contractual relationship with Smashwords, which allowed Smashwords to convey rights to Defendant, then Defendant's listing was unauthorized as of October 27, 2011, when Smith terminated his contract with Smashwords. *See* ¶ 15; *see also* Exhibit C.

29.     Defendant made an unauthorized listing of the HSZ available on its website located on the Internet at www.barnesandnoble.com ("Website"); by so doing it unlawfully reproduced the HSZ, unlawfully distributed the HSZ, unlawfully displayed the HSZ, and unlawfully created a derivative work of the HSZ, either via unauthorized sales to its customers and/or via Defendant's "preview" feature, which allows the consuming public to create unauthorized samples of the HSZ which are stored on local access devices in the "Nook Library." *See generally* 17 U.S.C. § 106; *see also* Exhibit O, ("Getting a Free

Sample").

30. Defendant's unauthorized HSZ listing, with its "Get Free Sample" preview feature enabled, constitutes an offer to distribute the HSZ for the purpose of further distribution or public display. *See* Exhibit O, ("Getting a Free Sample"); *see also* 17 U.S.C. § 106.

31. Defendant's conduct, as described herein, constitutes direct copyright infringement of Smith's rights attached to the HSZ under the Copyright Act and contributes to the copyright infringement of the HSZ by Defendant's customers and/or the consuming public. *See generally* 17 U.S.C. § 106.

32. Defendant's conduct, as described herein, constitutes unfair competition under the Lanham Act by, *inter alia*, directing search engine results toward an unauthorized listing of the HSZ and away from Smith's authorized listing of the HSZ on Amazon.com. *See generally* 15 U.S.C. § 1125; *see also* Exhibit N, the HSZ on Amazon, attached hereto and incorporated herein by reference.

**FESTA'S FACTUAL ALLEGATIONS COMMOM TO ALL COUNTS**

33. Festa is a retired adult actor and a mainstream media movie critic and has been published in print; he also has been published as a freelance entertainment columnist. *See generally* Exhibit P, Affidavit of Henry Festa, attached hereto and incorporated herein by reference.

34. In the fall of 2010 Festa completed "Lust Life" ("the Book") which is an autobiographical life story and sexual showbiz career memoir, which Festa wrote as an actual portrayal of adult film history as well as a cautionary tale with a blunt, yet academic and

8

worldly muse, told from a humanistic literary perspective. *See* Exhibit Q, Festa's Copyright Registration Application issued by the U.S. Copyright Office, attached hereto and incorporated herein by reference; *see also generally* Exhibit P.

35. The original manuscript of the Book was produced in PDF format for Internet electronic distribution and download. *See generally* Exhibit P.

36. Upon completion of the Book in the fall of 2010, Festa solicited eBook distribution channels and registered on BN.com's Website; at that time BN.com accepted the PDF file format. *Id.*

37. Later in the fall of 2010, it came to Festa's attention that Defendant officially changed its policy and no longer accepted PDF eBooks. *Id.*

Closing Barnes and Noble Account

38. Around October of 2010, after Festa's failed attempt to upload what was a poor, unedited, misaligned, and obviously corrupted Nook version, he contacted BN.com's "PubIt!" (pubit.barnesandnoble.com) in order to cancel his account ("Account"). *Id.*

39. After Festa's failed attempt to convert the Book to Nook, he decided that the Nook format was potentially problematic with respect to "graphics" and decided to stay with the PDF file format. *Id.*

40. Subsequent to closing his Account, Festa became aware that the Book was available for sale on BN.com in Nook format. The BN.com listing indicates that the Book's publisher is "2kBooks," this is a fictitious name that Festa used for marketing purposes only, and is not a separate legal entity. *Id.*

9

### Continued Sales

41.     Subsequent to the original creation of the Book, changes were made to the PDF manuscript which included a copyright page, "meta data" information, "cut and paste" prevention settings and, most notably, cover page graphic modifications which can all be confirmed on the legitimate distribution source for the Book at eBookMall.com. *Id*.

42.     The Book's cover graphic on BN.com's listing is the cover graphic from Festa's original PDF eBook, submitted to BN.com and published by Defendant in 2010, which differs from the legal 2012 version available on eBookMall. *Id*.

43.     Festa's corrupted Nook version of the Book should have been removed from distribution by Defendant after Festa cancelled his Account, but it was not; it currently remains available for sale on Defendant's Website. *Id*.

44.     On or about July 19, 2012 Festa contacted Defendant, via email, to notify Defendant of its unauthorized use of the Book and requested that Defendant remove the Book from its Website. *Id*.

45.     On July 31, 2012 Martin Gwynn notified Festa, via email, that he had purchased a Nook version of the Book from BN.com on July 20, 2012. *Id*.; *see also* Exhibit O, ("Making a Purchase").

46.     Upon information and belief, as of the date of filing this Amended Complaint, Festa has received no response from Defendant regarding his email of July 19, 2012, nor has he received notification that any sales have been finalized. *See generally* Exhibit P.

47.     Upon information and belief, the unauthorized version of the Book, with a BN.com identifier of #2940011908699, has remained available for sale on BN.com's

10

Website since the fall of 2010. *Id.*

48. Festa's legal name is Enrico ("Henry") Festa, although he has gone by the name of Henry Festa most of his adult life, with very few exceptions. The Book was written under the pen name "Hank Rose" because in the adult entertainment industry Henry was known as "Hammering Hank Rose." *Id.*

49. Defendant created and displayed a listing of the Book in Nook format, with Defendant's "preview" feature enabled. *See* Exhibit P, p. 6; *see also* Exhibit O p. 4 ("Making a Purchase").

50. Defendant's listing of the Book was unauthorized because Festa's Account with Defendant was closed and, therefore, any contractual relationship with BN.com was terminated. *See* ¶ 38.

51. Defendant made an unauthorized listing of the Book available on its Website; by so doing it unlawfully reproduced the Book, unlawfully distributed the Book, unlawfully displayed the Book, and unlawfully created a derivative work of the Book, either via unauthorized sales to its customers and/or via Defendant's "preview" feature, which allows the consuming public to create unauthorized samples of the Book which are stored on local access devices in the "Nook Library." *See generally* 17 U.S.C. § 106; *see also* Exhibit O, ("Getting a Free Sample").

52. Defendant's unauthorized listing of the Book, with its "Get Free Sample" preview feature enabled, constitutes an offer to distribute the Book for the purpose of further distribution or public display. *See* Exhibit O, ("Getting a Free Sample"); *see also* 17 U.S.C. § 106.

53. Defendant's conduct, as described herein, constitutes direct copyright infringement of Festa's rights attached to the Book under the Copyright Act and contributes to the copyright infringement of the Book by Defendant's customers and/or the consuming public. *See generally* 17 U.S.C. § 106.

54. Defendant's conduct, as described herein, constitutes unfair competition under the Lanham Act by, *inter alia*, directing search engine results toward an unauthorized listing of the Book and away from Festa's authorized listing of the Book on eBookMall.com and by allowing the sale and display of a poor, unedited, misaligned, and obviously corrupted Nook version of the Book. *See generally* 15 U.S.C. § 1125. *See* Exhibit P, p.5; *see also* Exhibit O p.4.

## JOINDER OF PLAINTIFFS AND MISCELLANEOUS

55. Pursuant to Fed. R. Civ. P. 20(a)(1), each Plaintiff was properly joined because Plaintiffs' assert that: (a) Defendant is liable for the infringing activities as set forth in more detail above; and (b) the infringement complained of herein was part of a series of transactions, involving the exact same fact pattern: (i) each Plaintiff terminated its relationship with BN.com; (ii) BN.com continued to use an unauthorized Nook listing of each Plaintiff's work; and (iii) BN.com engaged in the exact same pattern of infringing activities regarding the respective works of each Plaintiff; and (iv) there are common questions of law and fact; indeed, the claims against the Defendants are identical.

56. Hereafter the HSZ (Smith's work) and the Book (Festa's work), are collectively referred to as "the Works" or "Works."

## Count I – Copyright Infringement
**[Damages for Copyright Infringement 17 U.S.C. § 501(a)]**

57. Smith incorporates by reference all the allegations set forth in this Complaint as if fully set forth herein.

58. Smith is the true creator and rightful owner of all rights related to the HSZ and, pursuant to 17 U.S.C. § 102(a), owns a copyright in same, for which an application for registration has been made and a certification issued.

59. Festa is the true creator and rightful owner of all rights related to the Book and, pursuant to 17 U.S.C. § 102(a), owns a copyright in same, for which an application for registration has been made.

60. Defendant, by using Plaintiffs' Works for its own economic gain without a contractual agreement with either Plaintiff— unlawfully reproduced the Works, unlawfully distributed the Works, unlawfully displayed the Works, and unlawfully created derivative versions of the Works, either via unauthorized sales or via unauthorized use of Defendant's "preview" feature, in violation of the enumerated rights contained in the Copyright Act. *See generally* 17 U.S.C. §§ 106 and 501.

61. Defendant, in addition to the infringing acts alleged in paragraph 60, or in the alternative, infringed on Plaintiffs' distribution right of the Works by making an offer to distribute the Works for the purpose of further distribution or public display. *See* 17 U.S.C. § 106 (3).

62. Upon information and belief, Defendant's acts of copyright infringement were willful and deliberate, in reckless disregard of Plaintiffs' copyright, and intended for its own

economic gain, without consideration for processes and safeguards that would have protected the rights of copyright holders. *See* 17 U.S.C. § 504(c)(2).

## Count II – Contributory Copyright Infringement
### [Damages for Copyright Infringement 17 U.S.C. § 501(a)]

63. Smith incorporates by reference all the allegations set forth in this Complaint as if fully set forth herein.

64. Plaintiffs' are the owners of the copyright in their respective Works, each of which contains an original work of authorship.

65. Defendant, by continuing to use unauthorized listings on its Website through the processes described above, copied the constituent elements of the Works that are original.

66. Plaintiffs did not authorize, permit or consent to Defendant's copying of the Works.

67. As a result of the foregoing, Defendant violated Plaintiffs' exclusive right to:

(A) Reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B) To prepare derivative works based upon the copyrighted Works in violation of 17 U.S.C. §§ 106(2) and 501;

(C) Redistribute copies of the Works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; and

(D) Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 50l, by showing individual images of the Works and transmitting said display of the Works by means of device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

68. Upon information and belief, Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

69. Plaintiffs have suffered actual damages that were proximately caused by Defendant, including lost sales and a diminution of the value of their copyrights.

## Count III - Unfair Competition
### [15 U.S.C. § 1125]

70. Smith incorporates by reference all the allegations set forth in this Complaint as if fully set forth herein.

71. Through thousands of hours of hard work, Plaintiffs have created original Works that have been published and sold on the Internet, through the enabling technologies that the Internet makes available.

72. Defendant's unauthorized listings of the Works constitutes unfair and unlawful competition under 15 U.S.C. § 1125 and misrepresents an affiliation between the Plaintiffs and Defendant.

73. Defendant's unauthorized listings have caused irreparable harm to Plaintiffs, and any continued display of any said listing will add to the irreparable harm already caused.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

### Count I – Copyright Infringement

(A) Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiffs' copyrighted Works;

(B) Order Defendant to delete and permanently remove copies of Plaintiffs' copyrighted Works from each of the computers under Defendant's possession, custody or control;

(C) Award Plaintiffs statutory damages in the amount of $150,000 pursuant to 17 U.S.C. § 504(c);

(D) Award Plaintiffs reasonable attorneys' fees and costs pursuant to 17 U.S.C. §505; and

(E) Grant Plaintiffs any other and further relief this Court deems just and proper.

### Count II – Contributory Copyright Infringement

(A) Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiffs' copyrighted Works;

(B) Order Defendant to delete and permanently remove copies of Plaintiffs' copyrighted Works from each of the computers under Defendant's possession, custody or control;

(C) Find that Defendant is liable for its own direct infringement and for the direct infringement it was the proximate cause of with respect to its customers and/or the consuming public;

(D) Award Plaintiffs statutory damages in the amount of $150,000 for each of Defendant's customers and/or members of the consuming public whose liability was proximately caused by Defendant, pursuant to 17 U.S.C. § 504(c);

(E) Award Plaintiffs reasonable attorneys' fees and costs pursuant to 17 U.S.C. §505; and

(F) Grant Plaintiffs any other and further relief this Court deems just and proper.

### Count III - Unfair Competition

(A) Award punitive damages for Defendant's acts of unfair competition;

(B) Award Plaintiffs reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117; and

(C) Grant Plaintiffs any other and further relief this Court deems just and proper.

### Designation of Place of Trial

Plaintiffs hereby designate New York, NY as the place of trial of the above-styled matter.

Respectfully submitted,

By: _____
Carlos A. Leyva
Florida Bar No. 0051017
**DIGITAL BUSINESS LAW GROUP, P.A.**
1001 Starkey Rd. #18
Largo, FL 33771
(800) 516-7903 phone
(800) 257-9128 fax
cleyva@digitalbusinesslawgroup.com

**ATTORNEY FOR PLAINTIFF
LOUIS K. SMITH**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2012, I sent the foregoing using Federal Express overnight delivery to opposing counsel Peter Stris.

By: _____
Carlos A. Leyva

18