UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
    LOUIS K. SMITH,                             :

                                         **Plaintiff,** :

                                                    :    1:12-cv-04374 (ALC) (GWG)
        -against-                          :
                                                    :    <u>**OPINION AND ORDER**</u>
    BARNESANDNOBLE.COM, LLC,         :
                                 **Defendant.**  :
                                                      :
------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

       Plaintiff Louis K. Smith ("Plaintiff") has sued Defendant BarnesandNoble.com, LLC ("Defendant") for allegedly selling Plaintiff's copyrighted book without his authorization. Following limited discovery, Defendant moves for summary judgment on Plaintiff's direct copyright infringement, contributory copyright infringement, and unfair competition claims. For the reasons set forth below, Defendant's Motion for Summary Judgment (ECF No. 27) is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

       Plaintiff authored a book entitled <u>Hardscrabble</u> and copyrighted it. (Am. Compl. ¶ 8, ECF No. 8). Subsequently, Plaintiff contracted with Smashwords, an online ebook distributor, to sell his book. (<u>Id.</u> ¶¶ 10). Under the contract, Smashwords distributed Plaintiff's book to its retail partners, including Defendant, to list online for sale to customers. (<u>Id.</u> ¶ 12).

       Plaintiff terminated his relationship with Smashwords in 2011. (<u>Id.</u> ¶ 11, Ex. C). Neither Plaintiff nor Smashwords notified Defendant of this termination. (Def.'s 56.1 ¶ 12, ECF No. 28-1; <u>see</u> Am. Compl. ¶ 20). As a result, approximately five months after Plaintiff terminated his contract with Smashwords, the book was still available for sale on Defendant's website. (Am. Compl. ¶ 13).

Plaintiff learned of the listing for his book on Defendant's website through Amazon—another book publisher, distributor, and seller with whom Plaintiff was dealing. (Def.'s 56.1 ¶ 13). As soon as Plaintiff notified Defendant of the offending listing, Defendant took it down. (Id. ¶¶ 14-15). Plaintiff, however, wanted a monetary settlement to compensate him for Defendant's offending conduct. (Id. ¶ 17). Defendant declined Plaintiff's demand. (See id. ¶¶ 17-18).

Thereafter, Plaintiff filed this lawsuit seeking statutory damages for alleged copyright infringement. (See generally, Compl., ECF No. 1). In August 2012, Plaintiff amended his complaint, adding claims for contributory copyright infringement and unfair competition. (Am. Compl. ¶¶ 63-73). All three causes of action stem from Defendant's allegedly impermissibly listing Plaintiff's book for sale on its website for five months after he revoked his authorization. (See generally, id.). In its Answer, Defendant asserts fifteen defenses, including failure to infringe or engage in unfair competition; equitable doctrines such as laches, estoppel, and waiver; as well as no damages or de minimis harm. (Ans. Defenses ¶¶ 2, 6, 10, 13, ECF No. 22).

At Defendant's request, the Court granted limited discovery on the preview and sale of Plaintiff's book through Defendant's website. (Scheduling and Disc. Order, ECF No. 25). Discovery revealed that Defendant did not sell any copies of Plaintiff's book. (Def.'s 56.1 ¶ 30). However, Defendant did provide customers[1] access to portions of the book. (See id. ¶¶ 31-60).

---

[1] The term "customer" is used broadly—it includes any individual who interacts with Defendant's website.

There are four ways by which a customer could view at least parts of Plaintiff's book through Defendant's website—the "See Inside" feature; the "webReader"; the "Read in Store" feature; and the sample.  (Id. ¶¶ 31, 36, 40, 43).  The "See Inside" feature "allows [customers] to replicate the experience of browsing a book . . . by flipping through selected pages."  (Id. ¶ 32).  The "See Inside" feature, however, was not available for eBooks.  (Id. ¶ 35).  Because Hardscrabble was an eBook, the "See Inside" feature was never available for it and no customers accessed Plaintiff's book through this feature.  (Id. ¶¶ 34-35).  The "webReader" "allows a customer to preview selected pages of eBook titles on Defendant's website.  (Id. ¶ 36).  Defendant launched the webReader in July 2012, nearly three months after Plaintiff's book was removed from Defendant's website.  (Id. ¶¶ 37-38).  Consequently, no customers accessed Hardscrabble through the "webReader."  The "Read in Store" feature "allows a customer to browse an eBook title using [Defendant's proprietary eReader or tablet] for up to an hour while in [Defendant's] retail store."  (Id. ¶ 41).  Defendant tracks a customer's use of this feature.  (See id ¶ 42).  Although this feature was available for Hardscrabble from January 14, 2010, to April 20, 2012, no customer availed of this feature to access it.  (Id. ¶ 42).

The last way a customer could have accessed at least parts of Plaintiff's book through Defendant's website is through a sample.  "A customer can obtain a sample of an eBook if a sample file has been created for that eBook."  (Id. ¶ 43).  If the vendor listing the eBook on Defendant's website authorizes a sample, Defendant creates and links a sample of that eBook to the listing when the book is first offered for sale.  (Id. ¶¶ 44-45).  Once a customer "obtain[s] a sample," the sample is stored in the customer's "digital locker."  (Id. ¶ 53).  The digital locker, which is maintained on Defendant's servers, provides an alternative to storing content on a

device where it takes up already limited storage space. (Id. ¶¶ 57-59). Content in a customer's digital locker, including samples, "can generally [be accessed] again in the future without limitation." (Id. ¶ 48). A customer can access content in his or her personal digital locker by first logging in to Defendant's website and then downloading it to Defendant's proprietary eReader or accessing it through the webReader. (Id. ¶ 56).

Because Smashwords, the vendor here, authorized such a sample, Defendant created a sample and made it available to customers. (Id. ¶ 46). Defendant's records show that one customer acquired a sample of Plaintiff's book in June 2010, and accessed it again on at least seven different occasions between June 2010 and July 2012 when the customer re-downloaded the book from his or her digital locker onto his or her device. (Id. ¶¶ 50, 60). This customer could also have accessed the sample through the webReader after it was launched, but Defendant does not track a customer's webReader usage. (Id. ¶¶ 61-62).

## II.  DISCUSSION

Defendant contends that it is entitled to summary judgment on each of Plaintiff's three counts because the undisputed material facts demonstrate that Plaintiff cannot prove the necessary elements of each cause of action. As to direct copyright infringement, Defendant also asserts that its conduct constituted "fair use" and that Plaintiff's conduct constitutes "abandonment." Although Plaintiff does not cross-move for summary judgment, he urges the Court to grant him summary judgment "sua sponte" on each of his three counts.

### A. Legal Standard

The Court shall grant summary judgment if the movant shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). The burden lies with the moving party to demonstrate the absence of any genuine issue of material fact and all inference and ambiguities are to be resolved in favor of the nonmoving party. Hotel Emps. & Rest. Emps. Union v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002). The movant may discharge this burden by demonstrating to the Court there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. Nat'l Union Fire Ins. Co. of Pittsburgh v. Walton Ins. Ltd., 696 F. Supp. 897, 900 (S.D.N.Y. 1988). If "no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994).

Notably, "although [a court has] no discretion to enter summary judgment when there is a genuine issue as to any material fact, [a court has] discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact." Federal Rule of Civil Procedure 56 advisory committee's note (citing Kennedy v. Silas Mason Co., 334 U.S. 249, 256-57 (1948); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

5

B. **Unfair Competition**

Although in his Amended Complaint Plaintiff only generally pleads unfair competition, in his opposition to Defendant's motion, he clarifies that he brings his cause of action for unfair competition under Lanham Act Section 43(a)(1)(A). Lanham Act Section 43(a)(1)(A) imposes liability "for any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that "is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ." 15 U.S.C. § 1125(a)(1)(A). In simpler words, a claim under Section 43(a)(1)(A) is one for false representation. Agence France Presse v. Morel, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011).

The Supreme Court has cautioned that "[t]he words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to consumers." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 32 (2003). In that context, the Supreme Court stated that "[t]he consumer who buys a branded product does not automatically assume that the brand-name company is the same entity that came up with the idea for the product, or designed the product—and typically does not care whether it is." Id. Applying Dastar, the court in Agence France found that claims "for false representation of 'affiliation' between the author and a distributor of communicative products" are barred. Agence France, 769 F. Supp. 2d at 307. In that case, a news agency sought declaratory judgment against a photographer that misrepresenting the authorship of his photographs was not a violation of Section 43(a)(1)(A). Id. at 298. The court granted declaratory judgment, noting that the photographer's recourse,

6

"whether through a false claim of authorship or a false assertion of license, lies in copyright law, not in trademark." Id. at 307-08.

According to Plaintiff, his "theory of consumer confusion rests on the fact that Defendant's use of an unauthorized listing of Plaintiff's book], five months after [Plaintiff] terminated his relationship with Smashwords, [violates] the origin, sponsorship, or approval of [Plaintiff's] goods or commercial activities by another person" clause of Section 43(a)(1)(A). (Opp. Mot. Summ. J. 18-19, ECF No. 31). Plaintiff's gripe against Defendant does not even rise to the level of that in Agence France. Plaintiff does not accuse Defendant of misrepresenting the authorship of his work, as in Agence France. Instead, Plaintiff simply accuses Defendant of the unauthorized use of his name and book, which allegedly "divert[ed] traffic away from sites that [were] authorized to sell" his book. (Opp. Mot. Summ. J. 18). This issue is not one of consequence to consumers. Plaintiff's claim against Defendant for unfair competition cannot stand.

### C. Direct and Contributory Copyright Infringement

Based on the record as developed to date, the Court cannot decide, as a matter of law, that either party is entitled to summary judgment on either of these two counts. The Court therefore denies Defendant's Motion for Summary Judgment as to the direct and contributory copyright infringement claims. The reasons for this denial will be discussed at a forthcoming status conference.

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 27) is GRANTED as to Plaintiff's claim for unfair competition infringement and DENIED

without prejudice as to Plaintiff's claim for direct copyright infringement and contributory copyright infringement. The Court declines Plaintiff's invitation to "sua sponte" grant him summary judgment on his direct and contributory copyright infringement claims.

**SO ORDERED.**

Dated: September 22, 2014
New York, New York

/s/ Andrew L. Carter, Jr.
**ANDREW L. CARTER, JR.**
**United States District Judge**